# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

───────────────

№ 09-CV-1028 (JFB) (ETB)

───────────────

JAMES KAPSIS,

Plaintiff,

VERSUS

THE INDEPENDENCE PARTY STATE COMMITTEE OF THE STATE OF NEW YORK, ET AL.,

Defendants.

───────────────

MEMORANDUM AND ORDER
November 1, 2010

───────────────

JOSEPH F. BIANCO, District Judge:

Plaintiff James Kapsis brings this case asserting claims under, *inter alia*, 18 U.S.C. § 1962, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

Four groups of defendants have appeared in this action: (1) the Independence Party State Committee of the State of New York; the Independence Party State Committee Executive Committee of the State of New York; Frank MacKay, Chairman; Thomas Connolly, Vice Chairman; William Bogardt, Secretary; the Independence Party County Committee of Nassau County; the Executive Committee of the Independence Party County Committee; Bobby Kalotee Chairman; Joan Soffel, Secretary (collectively "the Independence Party defendants"); (2) John DeGrace and William Biamonte, the Commissioners of the Nassau County Board of Elections (collectively "the BOE defendants"); (3) Joseph Mondello, Chairman of the Nassau County Republican Committee; and (4) Jay Jacobs, Chairman of the Nassau County Democratic Committee.[1]

Pending before the Court are (1) plaintiff's motion to disqualify Steven Schlesinger, attorney for defendant Jacobs, and (2) motions to dismiss filed by each of the four groups of defendants. As set forth below, the Court

---

[1] Four other defendants—Douglas Kellner, Neil Kelleher, Evelyn Acquila, and Helena Moses Donohue—apparently were never served with process and have not appeared in this case.

concludes that the motion to disqualify should be denied and that the motions to dismiss should be granted in their entirety.

I. MOTION TO DISQUALIFY

Plaintiff argues that Steven Schlesinger, counsel for defendant Jay Jacobs, Chairman of the Nassau County Democratic Committee, should be disqualified from this action. The Court disagrees.

A. Background

The basis for plaintiff's motion is that Mr. Schlesinger represented plaintiff in state-court litigation several years ago. The specifics of these cases are unclear from the papers plaintiff filed in support of his motion.

In opposition to the motion, Schlesinger explains, in a declaration submitted under penalty of perjury, that he has been long-time counsel to the Nassau Democratic Party. (Schlesinger Decl. ¶ 27.) He asserts that when a candidate of one political party (such as the Democrats or Republicans) seeks to be cross-endorsed by the Independence Party, the appropriate officials of the Independence Party must issue a so-called Wilson-Pakula certificate to the candidate. (*See id.* ¶ 16.) In approximately the 2004-05 time frame, Kapsis was leading a faction of the Independence Party that was favorable to Democratic candidates and that maintained, over the objections of other elements of the Independence Party not favorable to the Democrats, that it had the proper authority to issue the Wilson-Pakula certificates. (*See id.* ¶¶ 18-19.) According to Schlesinger's declaration, he represented Kapsis at the direction of the Nassau Democratic Party "during a few election cycles" with the aim of securing for Kapsis's faction the right to issue Wilson-Pakula certificates. (*See id.* ¶¶ 19-20.) Schlesinger notes that he was never directly retained or paid by plaintiff and that plaintiff "was at all times aware that my defense of his chairmanship was for the primary benefit of the Democratic candidates that were the beneficiaries of the Plaintiff's Wilson-Pakula Certificates." (*See id.* ¶ 22.) Additionally, Schlesinger notes that Kapsis waited 15 months after Schlesinger appeared in this case before filing the motion to disqualify. (*See id.* ¶ 11.)

B. Applicable Law

Disqualification is "viewed with disfavor in this Circuit," *Bennett Silvershein Associates v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991), because it impinges on a "client's right freely to choose his counsel." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (citation omitted). In particular, the Second Circuit has noted the "high standard of proof" required for disqualification motions because, among other things, they are "often interposed for tactical reasons," and "even when made in the best of faith, such motions inevitably cause delay." *Evans*, 715 F.2d at 791-92 (internal quotation marks and citations omitted); *accord Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).

The disqualification of counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). A federal court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process,'" *Hempstead Video, Inc. v. Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Board of Education of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d

Cir. 1979)), and is only appropriate where allowing the representation to continue would pose a "significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981). In exercising this power, courts look for "general guidance" to the American Bar Association ("ABA") and state disciplinary rules, although the Second Circuit has emphasized that "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video*, 409 F.3d at 132.[2]

Moreover, in cases of successive representation, the Second Circuit has explained that an attorney may be disqualified if:

> (1) the moving party is a former client of the adverse party's counsel;
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Id.* at 133 (citation omitted).

In addition, under *Allegaert v. Perot*, 565 F.2d 246 (2d Cir.1977), a fourth requirement applies when the earlier representation involved a joint effort. Specifically, "'[b]efore the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client.'" *Ello v. Singh*, No. 05-CV-9625 (KMK), 2006 WL 2270871, at *3 (S.D.N.Y. Aug. 7, 2006) (quoting *Allegaert*, 565 F.2d at 250); *accord Pacheco Ross Architects v. Mitchell Assocs. Architects*, No. 08-cv-466 (GTS/RFT), 2009 WL 1514482, at *3-4 (N.D.N.Y. May 29, 2009) (finding *Allegaert* test not met); *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 n.7 (S.D.N.Y. 1985).

### C. Application

The high standard for disqualification of counsel is not met here. As a threshold matter, Schlesinger asserts that his earlier representations of Kapsis involved a joint effort between the Nassau Democratic Party and Kapsis's faction of the Independence Party. Kapsis presents no evidence to rebut this. Moreover, Kapsis presents no evidence even suggesting that Schlesinger "was in a

---

[2] The Court also notes that Civil Rule 1.5(b)(5) of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York binds attorneys appearing before those courts to the New York State Rules of Professional Conduct. *See* Local Civ. R. 1.5(b)(5). Moreover, although the Canons of the Code of Professional Responsibility in the State of New York have been replaced with the newly implemented New York State Rules of Professional Conduct, the Court notes that the case authority interpreting the old canons continues to be probative on issues that are analyzed under the new rules, especially where (as with the applicable rules in the instant case) the new rule generally incorporates the substance of the old canons. *See, e.g.*, *Pierce & Weiss, LLP v. Subrogation Partners LLC*, 701 F. Supp. 2d 245, 251-52 (E.D.N.Y. 2010) ("Even though the Canons have been replaced by the New York Rules of Professional Conduct, the new rules still incorporate much of the substance of the old rules. Therefore, much of the precedent interpreting the old rules still remains applicable." (citation omitted)).

3

position where [Schelsinger] could have received information which [Kapsis] might reasonably have assumed [Schlesinger] would withhold from his present client,"[3] namely, Jay Jacobs, the Chairman of the Nassau County Democratic Party since 2001. (*See* Schlesinger Decl. ¶ 27.) Indeed, because Schlesinger's earlier representations of Kapsis apparently involved an effort to get Democratic Party candidates cross-endorsed on the Independence Party line, the only reasonable assumption that Kapsis could make was that Schlesinger *would* share information with Jacobs, the Democratic Committee chairman and his current client. Therefore, Kapsis cannot make the additional showing that *Allegaert* requires under the circumstances of this case.

Furthermore, even if that requirement was met, plaintiff has not met his burden of showing a substantial relationship between this action and the earlier cases. "The party seeking disqualification must show 'that the relationship between the issues in the prior and present cases is 'patently clear,'' and that the issues are 'identical' or 'essentially the same.'" *Leslie Dick Worldwide, Ltd. v. Soros*, No. 08 Civ. 7900 (BSJ) (THK), 2009 WL 2190207, at *9 (S.D.N.Y. July 22, 2009) (quoting *Gov't of India v. Cook Indus.*, 569 F.2d 737, 739-40 (2d Cir. 1978)); *accord Norris v. City of New Haven*, No. 3:04cv543 (MRK), 2006 WL 2567866, at *1 (D. Conn. Sept. 5, 2006). Here, Kapsis presents absolutely no specifics as to the subject of the prior litigations. Furthermore, as discussed *infra*, Kapsis's factual allegations in this action are rather vague and confusing. Under these circumstances, the Court is unable to conclude that there is a substantial relationship between the issues in this case and in the earlier cases in which Schlesinger represented Kapsis.[4]

In sum, Kapsis's motion falls well short of meeting the high standard for a motion to disqualify, and the motion is accordingly denied.

## II. MOTION TO DISMISS

Defendants have also moved to dismiss the Second Amended Complaint. As set forth below, the court grants the motion in its entirety.

### A. Background

#### 1. Factual Background

The Second Amended Complaint, which is the operative complaint, is somewhat difficult to comprehend. However, it is abundantly clear that the core claim, upon which the other claims and forms of relief are all predicated, is that plaintiff believes he is the "legitimate Chairman of the Nassau County Committee of the Independence Party." (*See* SAC ¶ 58.) He alleges that defendants engaged in a conspiracy to deprive him of this position and

---

[3] *Allegaert*, 565 F.2d at 250.

[4] Although, as discussed *infra*, Kapsis's complaint in this case is predicated on prior state-court actions, Kapsis does not assert that Schlesinger represented him in those actions. Kapsis's moving papers also cite a now-closed case in this district where an attorney from Schlesinger's firm represented Kapsis. However, the Court's independent review of the docket sheet in that case—*Civic Development Group, LLC v. Perez, Demetri, Synder, and Haber, LTD*., 07-cv-03475 (TCP) (ARL)—reveals no evidence that the case was in any way related to this case. Kapsis's papers on the instant motion describe the case as a "personal Matter." (Pl.'s Mem. of Law at 4.)

4

that defendants carried out much of this conspiracy through the state-court system. (*See* SAC ¶¶ 39-41, 53, 69, 70-71, 75-76.) Plaintiff seeks, *inter alia*, "[a] preliminary and permanent injunction requiring that the name of Defendant [sic] Kapsis be acknowledged by the Nassau County Board of Elections as the only Chairman of the Nassau County Committee of the Independence Party." (SAC Prayer for Relief ¶ 2.)

2. Prior Litigation

Plaintiff has brought numerous other cases in federal and state court relating to his alleged role in the Nassau County Independence Party. *See, e.g.*, *Kapsis v. Brandveen*, No. 09-cv-1352 (JS) (AKT), 2009 WL 2182609, at *3 (E.D.N.Y. July 20, 2009) (noting in lawsuit brought by plaintiff against state-court judges that plaintiff has filed ten cases in the Eastern District of New York since 2004, at least six of which "pertain[ed] to the Nassau County Independence Party" (collecting cases)).

Defendants argue that one of these cases—a 2008 decision by Justice Arthur Diamond of New York State Supreme Court, Nassau County—prevents plaintiff from bringing this action. (*See* Independence Party Defs.' Mem. of Law at 6-8; BOE Defs.' Mem. of Law at 9.) Plaintiff brought that action against a number of defendants, including "The Purported Independence Party County Committee of Nassau County" and "The Purported Executive Committee of the Independence Party County Committee."[5]

---

[5] The individual Independence Party defendants in the instant case—Kalotee, Soffell, MacKay, Connolly, and Bogardt—and the BOE defendants in this case were also defendants in the case before Justice Diamond.

(*See Kapsis v. The Independence Party State Comm. of the State of N.Y.*, Index. No. 2917/08, (N.Y. Sup. Ct., Nassau Cnty., May 19, 2008), ECF No. 50-4, at 2-3 (the "May 18, 2008 Nassau Supreme Court Opinion").) Kapsis sought, *inter alia*, to enjoin the defendants from "further use of Independence Party name and the emblem" and "to require an accounting for party books, records, and funds and property." (*Id.* at 3.) The court dismissed this claim, holding that Kapsis and his co-plaintiff did not "have standing to enjoin Respondents since James L. Kapsis is not the Chairman of the Nassau County Independence Party." (*Id.* at 5.) The opinion went on to review prior state-court litigation between Kapsis and the Independence Party and closed by reiterating that "James Kapsis is not the Chairman of the Nassau County Independence Party." (*Id.* at 7.)

B. Standard of Review

When a court reviews a motion to dismiss for lack of subject-matter jurisdiction, it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

When a Court reviews a motion to dismiss for failure to state a claim for which relief can

5

be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### C. Discussion

Defendants raise a number of arguments in support of dismissal. For the reasons that follow, the Court concludes that the *Rooker-Feldman* doctrine and the doctrine of collateral estoppel bar plaintiff's claims.

#### 1. *Rooker-Feldman* Doctrine

Defendants argue that the *Rooker-Feldman* doctrine bars plaintiff's claims because plaintiff is essentially appealing Justice Diamond's May 2008 decision. The Court agrees.

The Second Circuit has delineated four requirements for the application of the *Rooker-Feldman* doctrine: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks and alterations omitted). The Second Circuit has classified the first and fourth requirements as "procedural" and the second and third requirements as "substantive." *See id.*

All of these requirements are met here. First, it is undisputed that plaintiff lost the case before Justice Diamond, as well as other cases in state court relating to his role in the Nassau County Independence Party.

Additionally, although plaintiff's precise allegations are difficult to decipher, it is clear that he is asserting that he was injured by decisions of the state courts and that he seeks federal court review of those decisions. For example, in her declaration submitted in opposition to defendants' motions to dismiss, plaintiff's counsel states that "[t]his action is predicated on the Judgments and Decrees from Supreme Court[,] Nassau County[,] State of New York in Index Nos. 002917-08 [i.e., the May 2008 decision by Justice Diamond], 23002-07, 13543-08 and others, in which State courts have ignored statu[t]e, case law, and the constitution." (LoPresti Decl. ¶ 12.) Furthermore, at oral argument, plaintiff's counsel acknowledged that the instant case is "basically a culmination of everything that transpired" in state court. (*See* Oral Argument Audio, FTR at 12:50.) Indeed, the Second Amended Complaint is replete with references to allegedly erroneous state-court rulings. (*See, e.g.*, SAC ¶ 69 ("The Honorable Justice Antonio Brandveen, Supreme Court, Nassau County, rendered a determination that improperly dismissed a Verified Petition in State court action [sic] . . . . The actions of the lower court exceed mere incompetence and

6

negligence but the actions are intentional and deliberate, designed to deliberately circumvent case law, statutes, and relevant facts."); *Id.* ¶ 71 ("Justice Brandveen deliberately circumvented the plaintiffs [sic] rights and overlooked and disregarded the Election Law mandate . . . ."); *Id.* ¶ 76 ("The plaintiff has been and continues to be prejudiced by the purging of evidence by the Supreme Court.").) Moreover, the Second Amended Complaint plainly is based upon plaintiff's fundamental contention that he is chairman of the Nassau County Committee of the Independence Party, a claim that, as described *supra*, was soundly rejected in Justice Diamond's May 2008 ruling. (*Compare* SAC ¶ 58 ("The defendants have acted in collusion and the Nassau County Board of Elections and Commissioners . . . conspired to deprive plaintiff of equal protection of the law by violating the basic right to due process, and not recognizing the Certificates of Authorization submitted by Kapsis *the legitimate Chairman of the Nassau County Committee of the Independence Party*. (emphasis added)) and *id.* Prayer for Relief ¶ 2 ("Plaintiff demands . . . [a] preliminary and permanent injunction requiring that . . . Kapsis be acknowledged by the Nassau County Board of Elections as the only Chairman of the Nassau County Committee of the Independence Party.") *with* May 18, 2008 Nassau Supreme Court Opinion at 5 (noting that Kapsis did "not have standing to enjoin Respondents since [he] is not the Chairman of the Nassau County Independence Party") and *id.* at 7 ("James Kapsis is not the Chairman of the Nassau County Independence Party.").) Neither in his opposition papers, nor at oral argument, was plaintiff able to identify any portion of this lawsuit that would not require review and reversal of the prior state court judgment. Accordingly, insofar as all state-court proceedings ended before this action was commenced in March 2009, the *Rooker-Feldman* doctrine bars plaintiff's claims, and they must be dismissed for lack of subject matter jurisdiction.

2. Collateral Estoppel

The Court concludes in the alternative that, even if the *Rooker-Feldman* doctrine did not bar plaintiff's claims, collateral estoppel would.

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state-court judgments the same preclusive effect as the judgment would have in the state from which it originated. *See* 28 U.S.C. § 1738 ("[J]udicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."); *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("We apply federal law in determining the preclusive effect of a federal judgment and New York law in determining the preclusive effect of a New York State court judgment." (internal citations omitted)). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted).

Both elements are met here. First, the issue of plaintiff's claim to the chairmanship of the Nassau County Independence Party was necessarily decided in the action before Justice Diamond. Specifically, Justice

Diamond determined that Kapsis could not enjoin the respondents in that case from holding themselves out as the Independence Party because Kapsis was not the chairman and thus lacked standing. Second, Kapsis had a full and fair opportunity to litigate his claim to the chairmanship in state court. Justice Diamond's decision reflects, for example, that Kapsis and his co-plaintiff in that action actively opposed the respondents' motion to dismiss and were represented by counsel. (*See* May 18, 2008 Nassau Supreme Court Opinion at 3, 5-7 (specifically addressing arguments raised by Kapsis and his co-plaintiff).) In short, the requirements for collateral estoppel are met because Kapsis seeks to re-litigate an issue—his right to the chairmanship of the Nassau County Independence Party—that a state court has already decided. Thus, Kapsis's claim is subject to dismissal on this ground as well.[6]

### 3. Leave to Re-plead

Furthermore, the Court finds that the case should be dismissed with prejudice because re-pleading would be futile given the *Rooker-Feldman* doctrine and the collateral estoppel effect of the May 2008 state-court judgment. *See Remy v. N.Y. State Dep't of Taxation and Fin.*, No. CV 09-4444(SJF)(AKT), 2010 WL 3925184 at *19 (E.D.N.Y. Aug. 18, 2010) (recommending that claims barred by *Rooker-Feldman* doctrine be dismissed with prejudice because granting leave to re-plead would be futile), *Report and Recommendation Adopted by* 2010 WL 3926919 (E.D.N.Y. Sep 29, 2010); *Coalition for a Level Playing Field, LLC v. Autozone, Inc.*, - - - F. Supp. 2d - - - -, No. 1:04-cv-08450-RJH, 2010 WL 3590187, at *9-10 (S.D.N.Y. Sept. 7, 2010) (dismissing with prejudice claims barred by collateral estoppel and res judicata). Simply put, plaintiff cannot bring a claim based on injuries flowing from that judgment nor can he assert that he is rightfully the chairman of the Nassau County Independence Party.

## IV. CONCLUSION

For the reasons set forth above, plaintiff's motion to disqualify attorney Schlesinger is denied, and defendants' motions to dismiss are granted. All other pending motions in this case are denied as moot.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: November 1, 2010
Central Islip, New York

\* \* \*

Counsel for plaintiff is Genevieve Lane Lopresti, 219 Mineola Blvd., Mineola, NY 11501. Counsel for the Independence Party defendants is Alan Zigman, Law Office of Steven Cohn, P.C., 1 Old County Road, Carle Place, NY 11514. Counsel for the BOE defendants is Michelle M. Faraci, Deputy County Attorney, Office of the Nassau County Attorney, 1 West Street, Mineola, NY 11501. Counsel for defendant Mondello are Kenneth Gray and Peter Bee, Bee, Ready, Fishbein, Hatten & Donovan, LLP, 170 Old Country Road, Mineola, NY 11501. Counsel for defendant Jacobs are Steven Schlesinger and

---

[6] Defendants assert a number of other grounds for dismissal of the lawsuit. However, given that dismissal is warranted under the *Rooker-Feldman* doctrine and the doctrine of collateral estoppel, the Court need not address the alternative grounds for dismissal.

Hale Yazicioglu, Jaspan Schlesinger, LLP, 300 Garden City Plaza, Garden City, NY 11530.